UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MICHAEL DAVID STAMP,          **INDICTMENT**
JAMES LEONARD BECRAFT, Jr., and
DOUGLAS EDWARD DIEKMAN,

        Defendants.
_____/

        The Grand Jury charges:

## INTRODUCTION

1.     In or about 2011 and 2012, MICHAEL STAMP ("STAMP") owned and operated a large farming operation located in Southwest Michigan, Stamp Farms, LLC, and a grain elevator, Northstar Grain, LLC.  He also owned and operated several related farming entities.

2.     Over several years, STAMP rapidly increased the number of acres farmed by Stamp Farms, LLC, by acquiring agricultural land leases from landowners in Southwest Michigan, often by paying above-market rates.

3.     Over several years, STAMP operated his farming and grain elevator businesses with large bank loans and credit agreements.  STAMP also used crop insurance payments reinsured through the Federal Crop Insurance Corporation to help pay for some of his operations and make land lease payments.

4.     In or about 2011, STAMP needed money to pay for his business operations and pay off a large loan that was due to mature.

5.     In or about March to December 2011, STAMP fraudulently induced Wells Fargo

Bank, National Association, a federally-insured financial institution, to provide a $68 million credit facility (loan) to Stamp Farms, LLC, and Northstar Grain, LLC, by misrepresenting the amount of land he farmed and the value of his farming assets, including harvested grain, fertilizer, and fuel.

6.      In or about 2011 and 2012, after Wells Fargo Bank extended credit under the credit facility, STAMP continued to provide false information about his farming and grain elevator assets in order to induce Wells Fargo Bank to continue extending credit to him.

7.      In or about 2011 and 2012, and earlier, STAMP submitted false claims to the Federal Crop Insurance Corporation and its reinsurers to obtain crop insurance payments to help pay for some of his farming operations and make lease payments.

8.      In or about the fall of 2012, STAMP's misrepresentations to Wells Fargo Bank began to become apparent and, in or about November 2012, STAMP filed for personal bankruptcy protection, as did his farming operation, Stamp Farms, LLC, and several related companies.

9.      After filing for bankruptcy protection, STAMP committed bankruptcy fraud by lying about and concealing assets from the bankruptcy court and creditors, including Wells Fargo Bank.

10.     STAMP conspired with numerous individuals to defraud Wells Fargo Bank, the Federal Crop Insurance program, the bankruptcy court, and creditors.

11.      In particular, STAMP conspired with defendants JAMES LEONARD BECRAFT, Jr., and DOUGLAS EDWARD DIEKMAN to defraud the Federal Crop Insurance Corporation and its reinsurers.

## COUNT ONE
(Conspiracy to Commit Bank Fraud)

From in or about March 2011 to on or about November 18, 2013, in Van Buren County, in the Southern Division of the Western District of Michigan, and other places,

### MICHAEL DAVID STAMP,

defendant, did knowingly conspire, confederate, and agree with persons known, such as John Stapel, and unknown to the grand jury, to commit bank fraud against Wells Fargo Bank, National Association ("Wells Fargo Bank"), a federally insured financial institution.

**Object of the Conspiracy**

The object of the conspiracy was to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of Wells Fargo Bank by means of false and fraudulent pretenses, representations, and promises.

**Overt Acts**

At least one of the conspirators did accomplish at least one of the following overt acts to effect the object of the conspiracy, within the Western District of Michigan:

### MISREPRESENTATIONS BEFORE SIGNING THE
### WELLS FARGO BANK CREDIT AGREEMENT

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      On or about March 30, 2011, STAMP submitted false financial statements to Wells Fargo Bank, including a "Cash Loan Projection" and a "Cost and Rental Spreadsheet" which falsely claimed he was farming 44,000 acres.

3.      In or about May 2011 through in or about November 2011, STAMP made false oral

3

representations to Wells Fargo Bank concerning the number of acres he was farming.

4.     On or about August 30, 2011, STAMP sent email communications to Wells Fargo Bank, with false financial statements as attachments which misrepresented his net income and other assets.

5.     On or about September 8, 2011, STAMP sent an email communication to Wells Fargo Bank, with false financial statements as attachments. The false financial statements concerned STAMP's borrowing status with Rabobank Agrifinancing, a private lender, which was at that time lending money to defendant Stamp.

6.     On or about September 13, 2011, STAMP sent an email communication to Wells Fargo Bank, with a false Cash Flow Loan Projection in which he stated that he was farming 44,000 acres in 2011.

7.     On or about October 5, 2011, STAMP sent an email communication to Wells Fargo Bank, with false financial statements as attachments. The false financial statements concerned STAMP's borrowing status with Rabobank Agrifinancing, a private lender, which was at that time lending money to STAMP.

8.     On or about November 10, 2011, STAMP sent an email communication to Wells Fargo Bank, with false financial statements as attachments. Some of the false financial statements concerned STAMP's borrowing status with Rabobank Agrifinancing, a private lender, who was at that time lending money to STAMP.

9.     On or about December 6, 2011, STAMP sent an email communication to Wells Fargo Bank, with false financial statements as attachments.

10.     On or about December 7, 2011, STAMP sent an email communication to Wells

Fargo Bank, with false receipts for hundreds of thousands of dollars of payments in grain to his business operations.

11.     On or about December 9, 2011, STAMP sent an email communication to Wells Fargo Bank, with false receipts for hundreds of thousands of dollars of payments in grain to his business operations.

12.     On or about December 22, 2011, STAMP and his wife signed the Credit Agreement with Wells Fargo Bank.

13.     On or about December 22, 2011, in Schedule 6.18 of the Credit Agreement, STAMP misstated, and caused the misstatement of, the number of acres leased by Stamp Farms, including a false statement that it was leasing 15,805 acres of farmland from R.G and T.G.

14.     On or about December 22, 2011, STAMP and his wife signed a pledge agreement, a collateral agreement and a guaranty agreement binding their personal and corporate assets as security for the Credit Agreement with Wells Fargo Bank.

### MISREPRESENTATIONS AFTER SIGNING THE WELLS FARGO BANK CREDIT AGREEMENT

15.     On a date unknown, STAMP created and caused the creation of a false document, the "RCS Grain Inventory," which purported to be an inventory of Stamp Farms' grain in storage as of December 31, 2010.

16.     On a date unknown, STAMP created and caused the creation of a false document, the "John Stapel Inventory," which purported to be an inventory of Stamp Farms' grain in storage and fertilizer as of December 31, 2011.

17.     On or about January 31, 2012, STAMP caused false documents to be sent by email to Wells Fargo bank, concerning his borrowing base and other financial statements.

5

18.     On or about February 7, 2012, STAMP sent an email communication to Wells Fargo Bank containing false inventory information concerning fertilizers, chemicals, and other assets.

19.     On or about February 27, 2012, STAMP sent an email communication to John Stapel containing the false John Stapel Inventory and requested John Stapel to send it to Plante & Moran, PLLC, an accounting firm reviewing Stamp Farms' financial statements.

20.     On or about March 2, 2012, STAMP sent an email communication to Wells Fargo Bank containing false financial information, including the false John Stapel Inventory, and false information concerning his accounts receivable and accounts payable.

21.     On or about March 5, 2012, STAMP caused $147,000 of Northstar Grain, LLC, funds to be deposited to a Backroads Land Company bank account at First State Bank of Decatur.

22.     On or about March 5, 2012, STAMP caused false documents to be sent by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

23.     On or about March 21, 2012, STAMP sent an email communication containing false information and false attachments to Plante & Moran, PLLC.

24.     On or about March 23, 2012, STAMP sent an email communication to Plante & Moran, PLLC, with false inventory measurements as an attachment.

25.     On or about March 30, 2012, STAMP caused false documents to be sent by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

26.     On or about April 1, 2012, M.S. opened an account ending in -89 at Honor Credit Union under her name.

27.     On or about April 10, 2012, STAMP caused false documents to be sent by email to

6

Wells Fargo Bank, concerning his borrowing base and other financial statements.

28.     On or about April 11, 2012, STAMP sent the false John Stapel Inventory by email to Wells Fargo Bank.

29.     On or about April 13, 2012, STAMP sent an email communication to Plante & Moran, PLLC, with false grain storage information.

30.     On a date unknown, STAMP created and caused to be created a false document dated April 15, 2012, which purported to be a lease with Mroczek Farms for 880 acres of farmland.

31.     On or about April 27, 2012, STAMP caused false documents to be sent by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

32.     On or about May 2, 2012, STAMP sent false documents by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

33.     On or about May 25, 2012, STAMP caused false documents to be sent by email to Wells Fargo bank, concerning his borrowing base and other financial statements.

34.     From in or about June 2012 to in or about October 2012, STAMP diverted and caused the diversion of assets pledged as collateral to Wells Fargo Bank by depositing and having them deposited into Honor Credit Union checking account ending in -89.

35.     On or about June 27 and June 28, 2012, STAMP caused false documents to be sent by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

36.     On a date unknown, STAMP caused a false document dated June 29, 2012, to be created that purported to be an invoice to Gary Cooper Trucking for $483,073.

37.     On or about July 2, 2012, STAMP sent false documents by email to Plante Moran concerning the acreage of farmland leased by Stamp Farms.

38.     On or about July 11, 2012, STAMP sent the false RCS Grain Inventory by email to Tom Bayer, of Sikich, LLP, an accounting advisory firm.

39.     On a date unknown, STAMP instructed C.G. to create false documents relating to a fuel inventory as of December 31, 2011. This included a cover letter dated July 16, 2012, purporting to be confirmation by C.G. that he conducted the fuel measurement.

40.     On or about July 18, 2012, STAMP caused a Stamp Farms employee to send an email communication containing a false document concerning the measurement of grain inventories by John Stapel on December 31, 2011, to Plante & Moran, PLLC and Sikich, LLP.

41.     On or about July 20, 2012, STAMP sent the false fuel measurements and the false July 16, 2012, C.G. letter by email to Plante Moran and Sikich, LLP.

42.     On or about July 20, 2012, STAMP sent an email communication to Tom Bayer, of Sikich, LLP with false information about the RCS Grain Inventory, the false John Stapel Inventory and false financial information.

43.     On or about July 26, 2012, STAMP sent an email communication to Tom Bayer of Sikich, LLP, providing false documents concerning John Stapel and the John Stapel Inventory.

44.     On or about July 27, 2012, STAMP signed an account change card adding his name as an additional owner of account ending in -89 at Honor Credit Union.

45.     On or about July 27, 2012, STAMP caused John Stapel to swear to a false affidavit concerning the John Stapel Inventory.

46.     On or about July 27, 2012, STAMP caused a phone call to be placed to Wells Fargo Bank with false information about the John Stapel Inventory.

47.     On or about July 30, 2012, STAMP provided false financial information to Wells

Fargo Bank.

48.     On or about July 30, 2012, STAMP caused false documents to be sent by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

49.     In or about July 2012, STAMP caused phone calls to be placed to Plante Moran with false information about the J.S. Inventory.

50.     On a date unknown, STAMP created and caused to be created a false document, which purported to be a lease with Joe Kwiatkowski for 5,489 acres of farmland signed August 8, 2012.

51.     On a date unknown, STAMP created and caused to be created a false document, which purported to be a lease with Red Arrow Dairy for 2,685 acres of farmland signed August 8, 2012.

52.     On a date unknown, STAMP created, caused to be created and altered a false document, which purported to be a lease with DVD Enterprises for 1,852 acres of farmland.

53.     On or about August 29, 2012, STAMP caused approximately $80,000 of pledged and collateralized assets to be deposited to account ending in -89 at Honor Credit Union.

54.     On or about August 30, 2012, STAMP caused false documents to be sent by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

55.     On or about September 4, 2012, STAMP caused a false document to be sent by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

56.     In August and September 2012, STAMP provided false information to the Sargent Investigation Group, which was retained by Wells Fargo Bank, and directed others to do the same.

57.     In or about the fall 2012, STAMP caused the false farmland leases for

Kwiatkowski, Red Arrow Dairy, DVD Enterprises and Mroczek Farms, along with other false leases, to be sent to Crowe Horwath, LLP.

58.     On or about September 7, 2012, STAMP caused approximately $48,000 of pledged and collateralized assets to be deposited to account ending in -89 at Honor Credit Union.

59.     On or about September 29, 2012, STAMP caused a false document to be sent by email to Wells Fargo Bank, concerning his borrowing base and other financial statements.

60.     In or about September and October 2012, STAMP caused false lease confirmations to be sent to Crowe Horwath.

61.     In or about September 2012, STAMP caused a false confirmation of the fictitious Gary Cooper Trucking invoice to be sent to Crowe Horwath.

62.     In or about fall 2012, STAMP requested B.S. to lie to anyone if B.S. was questioned about the purported DVD Enterprises farmland lease.

63.     On or about October 23, 2012, STAMP caused approximately $60,000 of pledged and collateralized assets to be deposited to account ending in -89 at Honor Credit Union.

64.     On or about October 5, 2012, STAMP caused a check for $230,259.44, payable to Backroads Land Company, to be deposited in an account controlled by defendant Stamp at the First State Bank of Decatur.

65.     In November 2012, STAMP directed K.S. to divert multiple loads of Stamp Farms crops to the Hamilton Elevator, in violation of his agreements with Wells Fargo Bank.   The transferred crops were worth in excess of $50,000.   The proceeds from the unlawfully diverted crops were paid to R.T., AT, and L.S.

66.     In or about fall 2012, STAMP deleted and caused S.M. to delete files on the

10

Stamp Farms computer systems and to use special software to wipe incriminating files.

**18 U.S.C. § 1349**
**18 U.S.C. § 1344(1)**

## COUNT TWO
(Bank Fraud –Wells Fargo Bank)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      From in or about March 2011 to on or about December 22, 2011, in Van Buren County, in the Southern Division of the Western District of Michigan and other places,

**MICHAEL DAVID STAMP,**

defendant, did knowingly execute a scheme and artifice to defraud Wells Fargo Bank, a federally insured financial institution.

3.      Specifically, STAMP provided false information concerning his assets and liabilities to Wells Fargo Bank in connection with obtaining a Credit Agreement from the bank. STAMP, among other things:  (1) overstated the amount of farmland that he was farming; (2) overstated assets such as accounts receivable, seed, fertilizer, and crop inventory (growing and harvested); and (3) understated his accounts payable and other liabilities. Defendant Stamp provided false financial information to Wells Fargo Bank, both in writing and in oral statements. STAMP provided false information directly to Wells Fargo Bank and to accounting firms who were preparing financial statements for STAMP and his corporate entities.  STAMP created and caused the creation of false documents and entries in his business and accounting records.

**18 U.S.C. § 1344(1)**

## COUNT THREE
### (Bank Fraud –Wells Fargo Bank)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      From on or about December 23, 2011 to on or about November 18, 2013, in Van Buren County, in the Southern Division of the Western District of Michigan and other places,

### MICHAEL DAVID STAMP,

defendant, did knowingly execute a scheme and artifice to defraud Wells Fargo Bank, a federally insured financial institution.

3.      Specifically, STAMP provided false information concerning his assets and liabilities to Wells Fargo Bank in connection with maintaining a Credit Agreement from the bank. STAMP, among other things:  (1) overstated the amount of farmland that he was farming; (2) overstated assets such as accounts receivable, seed, fertilizer, and crop inventory (growing and harvested); (3) understated his accounts payable and other liabilities; and (4) diverted collateralized assets. STAMP provided false financial information to Wells Fargo Bank, both in writing and in oral statements.  STAMP provided false information directly to Wells Fargo Bank and to accounting firms who were preparing financial statements for STAMP and his corporate entities.  STAMP created and caused the creation of false documents and entries in his business and accounting records, and directed other persons to do the same.  STAMP directed witnesses to lie about his financial condition and used forged signatures on his business documents.

**18 U.S.C. § 1344(1)**

13

## COUNT FOUR
(False Statements/Reports – Wells Fargo Bank)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      From in or about December 2011 to in or about September 2012, in Van Buren County, in the Southern Division of the Western District of Michigan, and other places,

### MICHAEL DAVID STAMP,

defendant, did knowingly make false statements and reports for the purpose of influencing in any way, the action of  Wells Fargo Bank, National Association, a federally insured financial institution, concerning an application, commitment, renewal, and deferment of action on a loan, as follows:

(a)      On or about December 22, 2011, in Schedule 6.18 of the Credit Agreement, STAMP misstated, and caused the misstatement of, the number of acres leased by Stamp Farms, including a false statement that it was leasing 15,805 acres of farmland from R.G and T.G.

(b)      On or about December 22, 2011, in Schedule 4 to the Collateral Agreement, STAMP misstated, and caused the misstatement of, the number of acres leased by Stamp Farms, including a false statement that it was leasing 15,805 acres of farmland from R.G. and T.G.

(c)      On or about July 27, 2012, STAMP caused John Stapel to swear to a false affidavit concerning the John Stapel Inventory, which was submitted to Wells Fargo Bank on July 28, 2012.

(d)      In fall 2012, STAMP caused the false farmland leases for Kwiatkowski, Red Arrow Dairy, DVD Enterprises and Mroczek Farms, along with other false leases, to be sent to Crowe Horwath, LLP.

(e)      In or about September and October 2012, STAMP caused false lease confirmations

14

to be sent to Crowe Horwath.

        (f)      In or about September 2012, STAMP caused a false confirmation of the fictitious

Gary Cooper Trucking invoice to be sent to Crowe Horwath.

**18 U.S.C. § 1014**
**18 U.S.C. § 2**

## COUNT FIVE
(Conspiracy – False Statements - Crop Insurance)

From in or about March 2006 to in or about March 2013, in Van Buren County, in the Southern Division of the Western District of Michigan, and other places,

**MICHAEL DAVID STAMP,
JAMES LEONARD BECRAFT, Jr., and
DOUGLAS EDWARD DIEKMAN,**

defendants, did knowingly conspire, confederate, and agree with each other and with persons known, such as R.T., and persons unknown to the grand jury, to provide false statements to the Federal Crop Insurance Corporation and the companies it reinsures, in order to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of the Federal Crop Insurance Corporation, a part of the United States government, and the companies it reinsures.

**Background**

Congress created the Federal Crop Insurance Corporation (FCIC), a wholly owned government corporation, to promote the national welfare by improving agriculture.

The FCIC has created an insurance system that allows crop producers to reduce their risk to bad weather, natural pests, agricultural diseases, and other natural disasters.

The FCIC authorizes select insurance companies to offer multi-peril crop insurance coverage (MPCI) policies to farmers, including Hudson Insurance Group, Diversified Crop Insurance Services, and ARMtech Insurance Services.

The FCIC pays a portion of the premium for all crop insurance, as well as acting as a re-insurer responsible for part of loss claims filed by farmers who suffer defined crop losses.

The FCIC crop insurance program requires all applicants and plan participants to have an

16

insurable interest in the crop being placed under the protection of the crop insurance policy.

STAMP was a resident of Western Michigan who both owned farmland and leased farmland from others.

BECRAFT was an employee of STAMP and was responsible for (1) coordinating, implementing, and maintaining crop insurance coverage; (2) documenting which farmland the grain came from; and (3) handling crop insurance filings for Stamp Farms and its related entities.

DIEKMAN was a resident of Western Michigan who both owned farmland and leased farmland from others.

K.S. and C.G. were employees of STAMP and were responsible for harvesting grain and documenting which farmland that grain came from.

R.T. was a resident of Western Michigan, who owned farmland with another family member.

**Object of the Conspiracy**

The object of the conspiracy was to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of the Federal Crop Insurance Corporation, a part of the United States government, and the companies it reinsures, by means of false and fraudulent pretenses and representations about crop yields.

**Overt Acts**

At least one of the conspirators did at least one of the following overt acts to effect the object of the conspiracy, within the Western District of Michigan:

1.      The grand jury realleges and incorporates by references the allegations made above in the Introduction to the Indictment and in the Background to this Count, as if fully set forth

herein.

**STAMP Obtains Crop Insurance Payments In the Names of C.T., DIEKMAN, and R.T.**

2.      In or about 2006 and 2007, STAMP contracted and caused others to contract with the FCIC for crop insurance protection in the name of C.T., DIEKMAN, and R.T., who had no insurable interest in that land.

3.      In or about 2007, STAMP caused false crop insurance claims to be made in the names of C.T. and R.T.

### DIEKMAN Obtains Crop Insurance

4.      In 2008 and 2009, DIEKMAN contracted with Diversified Crop Insurance Services and the FCIC for crop insurance protection for crop production on farmland located in the Western District of Michigan.

5.      In 2010 to 2012, DIEKMAN contracted with ARMtech Insurance Services and the FCIC for crop insurance protection for crop production on farmland located in the Western District of Michigan.

### R.T. Obtains Crop Insurance

6.      On or about March 15, 2012, R.T. contracted with Hudson Insurance Company and the FCIC for crop insurance protection for crop production on farmland located in the Western District of Michigan.

### STAMP Pays the Insurance Premiums for DIEKMAN

7.      For the 2008 insurance coverage, STAMP caused one of his corporations to pay the premium on DIEKMAN'S crop insurance policy, by making a $32,359 payment through a bank account at Edgewater Bank.

18

8.       For the 2009 insurance coverage, STAMP caused one of his corporations to pay the premium on DIEKMAN's crop insurance policy, by making a $15,074.88 payment through a bank account at Edgewater Bank.

9.       For the 2010 insurance coverage, STAMP caused one of his corporations to pay the premium on DIEKMAN's crop insurance policy, by making a $15,444.44 payment through a bank account at Edgewater Bank.

10.      For the 2011 insurance coverage, STAMP caused one of his corporations to pay the premium on DIEKMAN's crop insurance policy, by making:  1) a $24,540 payment, and 2) a $1,227 payment, both payments through a bank account at Edgewater Bank.

11.      For the 2012 insurance coverage, STAMP caused one of his corporations to pay the premium on DIEKMAN's crop insurance policy, by making a $17,582 payment through a bank account at Edgewater Bank.

**STAMP Pays the Insurance Premiums for R.T.**

12.      For the 2012 insurance coverage, STAMP caused one of his corporations to pay the premium on R.T.'s crop insurance policies, by making a $11,426 payment through a bank account at Edgewater Bank.

**DIEKMAN Falsely Certifies Crop Insurance Losses**

13.      For the 2008 insurance coverage, DIEKMAN falsely certified under penalty of law that he was the insured person and 100% shareowner of the crops covered by the crop insurance policy.

14.      For the 2009 insurance coverage, DIEKMAN falsely certified under penalty of law that he was the insured person and 100% shareowner of the crops covered by the crop insurance

policy.

15.     For the 2010 insurance coverage, DIEKMAN falsely certified under penalty of law that he was the insured person and 100% shareowner of the crops covered by the crop insurance policy.

16.     For the 2011 insurance coverage, DIEKMAN falsely certified under penalty of law that he was the insured person and 100% shareowner of the crops covered by the crop insurance policy.

17.     For the 2012 insurance coverage, DIEKMAN falsely certified under penalty of law that he was the insured person and 100% shareowner of the crops covered by the crop insurance policy.

**R.T. Falsely Certifies a Crop Insurance Loss**

18.     On or about July 7, 2012, R.T. and a conspirator falsely certified under penalty of law that R.T. was the insured person and 100% shareowner of the crops covered by the crop insurance policies.

**DIEKMAN Falsely Certifies His Loss Statements and Production Worksheets**

19.     On or about March 14, 2009, DIEKMAN falsely certified under penalty of law that he held 100% lawful insured interest in the crop production reported on his loss statements and production worksheets submitted to Diversified Crop Insurance Services and the FCIC.

20.     On or about August 10, 2009, DIEKMAN falsely certified under penalty of law that he held 100% lawful insured interest in the crop production reported on his loss statement and replant worksheets submitted to Diversified Crop Insurance Services and the FCIC.

21.     On or about January 4, 2013, DIEKMAN, with the assistance of BECRAFT,

20

falsely represented that Diekman held 100% lawful insured interest in the crop production reported on his non-waiver agreement and his production worksheets submitted to ARMtech Insurance Services and the FCIC.

### R.T. Falsely Certifies His Loss Statements and Production Worksheets

22.     On or about February 6, 2013, R.T. falsely represented that he held 100% lawful interest in the crop production reported on his Crop Loss Elections forms and Production Worksheet Summaries to Hudson Insurance and the FCIC

### DIEKMAN Receives Crop Insurance Benefit Payments

23.     On or about March 19, 2009, Diversified Crop Insurance Services paid $76,342 in crop insurance benefits to DIEKMAN on his crop year 2008 claims.  DIEKMAN was not entitled to these funds as he had provided false information to Diversified Crop Insurance Services and the FCIC.

24.     On or about August 16, 2009, Diversified Crop Insurance Services paid $10,032 in crop insurance benefits to DIEKMAN on his crop year 2009 claims.  DIEKMAN was not entitled to these funds as he had provided false information to Diversified Crop Insurance Services and the FCIC.

25.     On or about January 22, 2013, ARMtech Insurance Services paid $141,610.84 in crop insurance benefits to DIEKMAN on his crop year 2012 claims.  DIEKMAN was not entitled to these funds as he had provided false information to ARMtech Insurance Services and the FCIC.

### Falsification of Stamp Farms / Northstar Grain, LLC Crop Records

26.     In fall 2012, STAMP, BECRAFT, K.S., and other employees of Stamp Farms made the crop ticket system unreliable by destroying, misfiling and omitting information from harvested

crop records in order to falsely claim losses on insured land and defraud the crop insurance providers and the FCIC.

### R.T. Receives Crop Insurance Benefit Payments

27.     On or about February 13, 2013, Hudson Insurance Company paid two crop insurance benefit checks to R.T.:   1) check #6556 for $14,966; and 2) check #6517 for $35,429.30. R.T. was not entitled to these funds as he had provided false information to Hudson Insurance Company and the FCIC.

28.     In February 2013, STAMP told R.T. to "hold the checks" and that defendant Stamp would get them later.

29.     In March 2013, STAMP told R.T. to cash the crop insurance checks and give the money from the two checks to defendant Stamp.

**18 U.S.C. § 371**
**18 U.S.C. § 1014**

## COUNT SIX
(False Statement - Crop Insurance)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      From in or about March 2012 to in or about February 2013, in Van Buren County, in the Southern Division of the Western District of Michigan, and other places,

**MICHAEL DAVID STAMP and
JAMES LEONARD BECRAFT, Jr.,**

defendants, did knowingly make false statements and reports for the purpose of influencing in any way, the action of the Federal Crop Insurance Corporation (FCIC) and ARMtech Insurance Services, a company reinsured by the FCIC.

3.      Specifically, the defendants obtained crop insurance on approximately 1,100 acres of land by falsely declaring that D.D. was actually farming that land and that he held a 100% insurable interest share in the land listed on the insurance application.  The defendants knew that D.D. was not accurately reporting his insurable interest in the specified farmland, under the rules and regulations of the FCIC.  In addition, the defendants manipulated the reporting of crop yield on the D.D. insured farmland to qualify for crop insurance payments to which they were not lawfully entitled.  The false statements and reports caused a loss of approximately $414,000 to the FCIC, the insurance companies, and the United States.

**18 U.S.C. § 1014
18 U.S.C. § 2**

23

## COUNT SEVEN
(False Statement - Crop Insurance)

1.     The grand jury realleges and incorporates by reference the allegations contained

above in the Introduction, as if fully set forth herein.

2.     From in or about March 2012 to in or about February 2013, in Van Buren County,

in the Southern Division of the Western District of Michigan, and other places,

**MICHAEL DAVID STAMP and
JAMES LEONARD BECRAFT, Jr.,**

defendants, did knowingly make false statements and reports for the purpose of influencing in any

way, the action of the Federal Crop Insurance Corporation (FCIC) and the Hudson Insurance

Company a company reinsured by the FCIC.

3.     Specifically, the defendants obtained crop insurance on approximately 200 acres of

land by falsely declaring that R.T. was actually farming that land and that he held a 100% insurable

interest share in the land listed on the insurance application.  The defendants knew that R.T. was

not accurately reporting his insurable interest in the specified farmland, under the rules and

regulations of the FCIC.  In addition, the defendants manipulated the reporting of crop yield on

the R.T. insured farmland to qualify for crop insurance payments to which they were not lawfully

entitled.  The false statements and reports caused a loss of approximately $65,000 to the FCIC, the

insurance companies, and the United States.

**18 U.S.C. § 1014
18 U.S.C. § 2**

24

## COUNT EIGHT
(Bankruptcy Fraud - Concealed Assets)

1.     The grand jury reallages and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.     From in or about November 30, 2012 to March 26, 2014, in Van Buren County, in the Southern Division of the Western District of Michigan, and other places,

**MICHAEL DAVID STAMP,**

defendant, did knowingly and fraudulently conceal, and did aid and abet the concealment of, property and assets that belonged to the estate of a debtor from the United States Bankruptcy Trustee and other trustees and officers of the Bankruptcy Court.

3.     Specifically, STAMP and his affiliated corporations filed for bankruptcy protection on November 30, 2012, in the following cases:   Bankruptcy Docket #12-10430 (STAMP individual); Bankruptcy Docket #12-10410 (Stamp Farms, LLC); Bankruptcy Docket #12-10411 (Stamp Farms Trucking LLC); Bankruptcy Docket #12-10416 (Stamp Farms Custom AG LLC); and Bankruptcy Docket #12-10417 (Royal Star Farms LLC).

4.     STAMP and his wife, Melissa Stamp, owned an account at the Honor Credit Union (HCU).   STAMP and Melissa Stamp obtained an official check from HCU in the amount of $75,000.   STAMP and Melissa Stamp transferred the official check to Steve Moser, a family member.   Steve Moser was instructed to deposit the check and hold the funds for STAMP and Melissa Stamp.   The official check and the funds represented assets that belonged to defendant Stamp and his affiliated corporations.   The official check and the funds were not disclosed in defendant Stamp's personal bankruptcy case and were not disclosed in his affiliated corporations' bankruptcy cases.

**18 U.S.C. § 152 (paragraph 1)**
**18 U.S.C. § 2**

## COUNT NINE
(Bankruptcy Fraud - Concealed Assets)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      From in or about November 30, 2012 to in or about February 1, 2013, in Van Buren County, in the Southern Division of the Western District of Michigan, and other places,

**MICHAEL DAVID STAMP,**

defendant, did knowingly and fraudulently conceal, and did aid and abet the concealment of, property and assets that belonged to the estate of a debtor from the United States Bankruptcy Trustee and other trustees and officers of the Bankruptcy Court.

3.      Specifically, Michael Stamp and his affiliated corporations filed for bankruptcy protection on November 30, 2012, in the following cases:  Bankruptcy Docket #12-10430 (Michael Stamp individual); Bankruptcy Docket #12-10410 (Stamp Farms, LLC); Bankruptcy Docket #12-10411 (Stamp Farms Trucking LLC); Bankruptcy Docket #12-10416 (Stamp Farms Custom AG LLC); and Bankruptcy Docket #12-10417 (Royal Star Farms LLC).

4.      Defendant Stamp and his wife, Melissa Stamp, owned an account at the Honor Credit Union (HCU).  Defendant Stamp and his wife caused two official checks to be issued from HCU in the amount of $9,000 and $82,500.  Defendant Stamp and his wife transferred the official checks to M.M., a family member.  M.M. was requested to deposit the check and hold the funds for Defendant Stamp and his wife.  The official check and the funds represented assets that belonged to defendant Stamp and his affiliated corporations.  The official check and the funds were not disclosed in defendant Stamp's personal bankruptcy case and were not disclosed in his affiliated corporations' bankruptcy cases.

**18 U.S.C. § 152 (paragraph 1)**
**18 U.S.C. § 2**

## COUNT TEN
(Bankruptcy Fraud - Concealed Assets)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      From in or about November 2012 to in or about February 2014, in Van Buren County, in the Southern Division of the Western District of Michigan, and other places,

**MICHAEL DAVID STAMP,**

defendant, did knowingly and fraudulently conceal property and assets that belonged to the estate of a debtor from the United States Bankruptcy Trustee and other trustees and officers of the Bankruptcy Court.

3.      Specifically, STAMP and his affiliated corporations filed for bankruptcy protection on November 30, 2012, in the following cases:  Bankruptcy Docket #12-10430 (Michael Stamp individual); Bankruptcy Docket #12-10410 (Stamp Farms, LLC); Bankruptcy Docket #12-10411 (Stamp Farms Trucking LLC); Bankruptcy Docket #12-10416 (Stamp Farms Custom AG LLC); and Bankruptcy Docket #12-10417 (Royal Star Farms LLC).

4.      STAMP owned "pulling" tractors with the name "Ghost Rider."  The tractors and parts represented assets that belonged to STAMP and his affiliated corporations.    STAMP concealed and caused the concealment of the pulling tractors from the United States Bankruptcy Trustee and other trustees and officers of the Bankruptcy Court.

**18 U.S.C. § 152 (paragraph 1)**
**18 U.S.C. § 2**

## COUNT ELEVEN
(Bankruptcy Fraud - False Declaration)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      From in or about January 2013 to in or about February 2013, and continuing thereafter, in Kalamazoo County, in the Southern Division of the Western District of Michigan,

**MICHAEL DAVID STAMP,**

defendant, in relation to his personal bankruptcy case under Title 11, did knowingly and fraudulently make a false declaration under penalty of perjury.

3.      Specifically, the defendant twice filed an Amended Schedule B in which he declared with regard to Question 2, that he had only one "[c]hecking, savings, or other financial account[]."

4.      In truth and fact, defendant Michael David Stamp was well aware that he also had an account at the Honor Credit Union, with the account number ending -89.


**18 U.S.C. § 152 (paragraph 3)**

## COUNT TWELVE
(Bankruptcy Fraud - False Oath)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      On or about February 4, 2013, in Kalamazoo County, in the Southern Division of the Western District of Michigan,

**MICHAEL DAVID STAMP,**

defendant, in relation to his bankruptcy case under Title 11, did knowingly and fraudulently make a false oath and account.

3.      While under oath in a "Meeting of Creditors" taken as part of the official proceedings in the bankruptcy case titled, In the Matter of Michael David Stamp, debtor, File #12-10430, STAMP falsely answered questions while under oath.  In particular, STAMP asserted that he did not have a bank safe deposit box.

4.      In truth and fact, STAMP was well aware that he had a bank safe deposit box at the First State Bank of Decatur.

**18 U.S.C. § 152 (paragraph 2)**

## COUNT THIRTEEN
(Bankruptcy Fraud - False Oath)

1.     The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.     On or about February 4, 2013, in Kalamazoo County, in the Southern Division of the Western District of Michigan,

**MICHAEL DAVID STAMP,**

defendant, in relation to his bankruptcy case under Title 11, did knowingly and fraudulently make a false oath and account.

3.     While under oath in a "Meeting of Creditors" taken as part of the official proceedings in the bankruptcy case titled, In the Matter of Michael David Stamp, debtor, File #12-10430, STAMP falsely answered questions while under oath.  In particular, STAMP asserted that he had not inflated the amount of grain possessed by Stamp Farms as disclosed in his borrowing base certificates.

4.     In truth and fact, STAMP was well aware that he had significantly overstated Stamp Farms' grain assets on his 2012 monthly borrowing base certificates sent to Wells Fargo Bank.

**18 U.S.C. § 152 (paragraph 2)**

30

## COUNT FOURTEEN
(Bankruptcy Fraud - False Declaration)

1.      The grand jury realleges and incorporates by reference the allegations contained above in the Introduction, as if fully set forth herein.

2.      From January 2013 to February 2013, and continuing thereafter, in Kalamazoo County, in the Southern Division of the Western District of Michigan,

**MICHAEL DAVID STAMP,**

defendant, in relation to his personal bankruptcy case under Title 11, did knowingly and fraudulently make a false declaration under penalty of perjury.

3.      Specifically, STAMP twice filed a Statement of Financial Affairs (SOFA) in which he declared in response to Question #1, that his "Income from employment or operation of business" for the year 2012 was $173,790.

4.      In truth and fact, STAMP was well aware that he had income from employment and operation of business for the year 2012 in an amount greater than what he reported on his SOFAs.


**18 U.S.C. § 152 (paragraph 3)**

## FORFEITURE ALLEGATION
(Conspiracy to Commit Bank Fraud)

The allegations contained in Count 1 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(2)(A).

Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of the offense in violation of 18 U.S.C. § 1349 set forth in Count 1 of this Indictment, the defendant,

**MICHAEL DAVID STAMP,**

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.  The property to be forfeited includes, but is not limited to, the following:

1.      MONEY JUDGMENT: A sum of money equal to at least $25,000,000, which represents the proceeds obtained, directly or indirectly from the offense charged in Count 1.

2.      SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

32

**18 U.S.C. § 982(a)(2)(A)**
**21 U.S.C. § 853(p)**
**18 U.S.C. § 982(b)(1)**
**18 U.S.C. § 1349**

## FORFEITURE ALLEGATION
(Bank Fraud)

The allegations contained in Counts 2 and 3 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(2)(A).

Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of the offense in violation of 18 U.S.C. § 1344 set forth in Counts 2 and 3 of this Indictment, the defendant,

**MICHAEL DAVID STAMP,**

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, directly or indirectly as a result of such violations.  The property to be forfeited includes, but is not limited to, the following:

1.     MONEY JUDGMENT: A sum of money equal to at least $ 25,000,000, which represents the proceeds obtained, directly or indirectly from the offenses charged in Counts 2 and 3.

2.     SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

34

    c.      has been placed beyond the jurisdiction of the court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be divided without

difficulty.

The United States of America shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

**18 U.S.C. § 982(a)(2)(A)**
**21 U.S.C. § 853(p)**
**18 U.S.C. § 982(b)(1)**
**18 U.S.C. § 1344**

## FORFEITURE ALLEGATION
### (Conspiracy to Make False Statements to FCIC)

The allegations contained in Count 5 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of a conspiracy to violate U.S.C. § 1014 in violation of 18 U.S.C. § 371 set forth in Count 5 of this Indictment, the defendants,

**MICHAEL DAVID STAMP and**
**JAMES LEONARD BECRAFT, Jr.,**

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense alleged in Count 5. The property to be forfeited includes, but is not limited to, the following:

1.     MONEY JUDGMENT: A sum of money equal to at least $5,185,590.37, which represents the proceeds traceable to the offense.

2.     SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c).

**18 U.S.C. § 981(a)(1)(C)**
**28 U.S.C. § 2461(c)**
**21 U.S.C. § 853(p)**
**18 U.S.C. § 371**
**18 U.S.C. § 1014**

## FORFEITURE ALLEGATION
### (False Statement to FCIC)

The allegations contained in Counts 6 and 7 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(2)(A).

Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of the offense in violation of 18 U.S.C. § 1014 set forth in Counts 6 and 7 of this Indictment, the defendants,

**MICHAEL DAVID STAMP and**
**JAMES LEONARD BECRAFT, Jr.,**

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, directly or indirectly as a result of such violations.  The property to be forfeited includes, but is not limited to, the following:

1.      MONEY JUDGMENT: A sum of money equal to at least $ 5,185,590.37, which represents the proceeds obtained, directly or indirectly from the offenses charged in Counts 6 and 7.

2.      SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without

difficulty.

The United States of America shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

**18 U.S.C. § 982(a)(2)(A)**
**21 U.S.C. § 853(p)**
**18 U.S.C. § 982(b)(1)**
**18 U.S.C. § 1014**

## FORFEITURE ALLEGATION
(Bankruptcy Fraud)

The allegations contained in Counts 8 and 9 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the violation of 18 U.S.C. § 152 set forth in Counts 8 and 9 of this Indictment, the defendant,

**MICHAEL DAVID STAMP,**

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses  The property to be forfeited includes, but is not limited to, the following:

1.     MONEY JUDGMENT: A sum of money equal to at least $166,500.00, which represents the proceeds obtained, directly or indirectly from the offenses charged in Counts 8 and 9.

2.     SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

**18 U.S.C. § 981(a)(1)(C)**
**21 U.S.C. § 853(p)**
**28 U.S.C. § 2461(c)**
**18 U.S.C. § 152**

A TRUE BILL

_____
GRAND JURY FOREPERSON

ANDREW BYERLY BIRGE
United States Attorney

_____
CLAY STIFFLER
Assistant United States Attorney

41